1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    CHRISTINE LANIER,                        Case No. 23-cv-01396-JST

8              Plaintiff,

9         v.                                  **ORDER GRANTING MOTION TO
                                              DISMISS**
10   SPECIALIZED LOAN SERVICING, LLC,         Re: ECF No. 32
     et al.,
11
               Defendants.
12

13        Before the Court is Defendants Specialized Loan Servicing, LLC, First Franklin Mortgage

14   Loan Trust, and U.S. Bank National Association's (collectively "Specialized") motion to dismiss

15   Plaintiff's second amended complaint ("SAC").  ECF No. 32.  For the reasons stated below, the

16   Court will grant the motion.

17   **I.       BACKGROUND**

18        On October 30, 2023, Plaintiff Christine Lanier filed her SAC in this action against

19   Specialized, whom she claims illegally seeks to collect a debt allegedly owed by her.  Because the

20   facts are well-known to the parties and the Court has summarized Lanier's allegations in detail in

21   its prior motion to dismiss order, ECF No. 30, the Court will not elaborate them here.

22        In its prior order, the Court dismissed Lanier's claims for negligence, violations of the Fair

23   Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"),

24   the Truth in Lending Act ("TILA"), California's Unfair Competition Law ("UCL"), as well as her

25   request for declaratory relief.[1]  The Court granted leave to file an amended complaint.  *See id.* at

26

27   _____

28   [1] Although Lanier alleges that Specialized breached the "Consumer Financial Protection Act," the
     SAC refers to 12 U.S.C. § 1026.41, which is the Truth in Lending Act.  ECF No. 31 at 25.  Thus,
     to avoid confusion, the Court will refer to this claim as the Truth in Lending Act, or TILA, claim.

United States District Court
Northern District of California

1    13.

2         Lanier's SAC renews the six claims set forth in her original complaint.  She now adds

3    allegations that Specialized is "subject to Fannie Mae's servicing guidelines" and integrates

4    various provisions of the guidelines into her claims.  ECF No. 31 ¶ 31; *see id.* ¶¶ 68–70, 82–84,

5    86, 96–99, 105–06, 129–34, 140–45, 149–50, 167–70.  These guidelines, which are incorporated

6    by reference as Exhibit D to Lanier's SAC, state that a "servicer must ensure all pre-petition and

7    post-petition payments are properly applied and monitored in accordance with all applicable laws

8    and as described [herein]."  *Id.* ¶ 33.

9         Specialized now moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure

10   12(b)(6).  ECF No. 32.

11   **II.    JURISDICTION**

12        The Court has jurisdiction over Lanier's federal claims pursuant to 28 U.S.C. § 1331 and

13   supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367.

14   **III.   LEGAL STANDARD**

15        "Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the

16   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

17   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "To survive a

18   motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

19   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

20   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a

21   cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  When ruling on a

22   motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the

23   pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068,

24   1072 (9th Cir. 2005).

25        Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ.

26   P. 15(a)(2).  "[A] district court should grant leave to amend even if no request to amend the

27   pleading was made, unless it determines that the pleading could not possibly be cured by the

28   allegation of other facts."  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook,*

United States District Court
Northern District of California

2

1    *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)). "Nevertheless,

2    the 'general rule that parties are allowed to amend their pleadings . . . does not extend to cases in

3    which any amendment would be an exercise in futility.'" *Novak v. United States*, 795 F.3d 1012,

4    1020 (9th Cir. 2015) (alteration in original) (quoting *Stechman v. Hart Brewing, Inc.*, 143 F.3d

5    1293 1298 (9th Cir. 1998)).

6    **IV.    JUDICIAL NOTICE**

7         Specialized requests that the Court judicially notice eight documents: assignment of the

8    deed of trust recorded on December 17, 2019 in Alameda County, ECF No. 33 at 6–8; the docket

9    for Lanier's Chapter 13 voluntary petition filed in the United States Bankruptcy Court for the

10   Northern District of California, Case No. 16-42795, *id.* at 9–18; Lanier's proof of claim filed on

11   February 7, 2017, *id.* at 19–27; Lanier's first amended application to modify the Chapter 13

12   bankruptcy plan on April 17, 2018, *id.* at 28–34; the bankruptcy court's order modifying the

13   Chapter 13 plan on June 18, 2018, *id.* at 35–37; the bankruptcy court's order of discharge on

14   January 12, 2022, *id.* at 38–39; Specialized's response to Lanier's qualified written request

15   ("QWR") dated March 30, 2022, *id.* at 40–125; and Specialized's final notice to Lanier, sent on

16   March 10, 2022, that the matured loan full payment was due, *id.* at 126–28.

17        Pursuant to Federal Rule of Evidence 201(b), courts may judicially notice facts that are

18   "not subject to reasonable dispute," meaning they are "generally known" or "can be accurately and

19   readily determined from sources whose accuracy cannot reasonably be questioned." Because the

20   deed of trust, docket sheet, proof of claim, bankruptcy court filings, and bankruptcy court orders

21   are "court filings [or] other matters of public record," the Court will take judicial notice of them.

22   *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2010).

23        Additionally, under the incorporation by reference doctrine, the Court will take judicial

24   notice of Specialized's QWR responses and the final notice of the matured loan payment. Lanier's

25   claims "depend on the contents" of these documents, Specialized has attached the documents to its

26   motion, and the parties do not dispute their authenticity. *See Knievel*, 393 F.3d at 1076.

27

28

United States District Court
Northern District of California

3

1      **V.      DISCUSSION**

2            **A.      Fannie Mae Servicing Guidelines**

3            Although Lanier's SAC renews the same six claims from her original complaint, she now

4      attempts to bolster each claim with allegations that Specialized is "subject to Fannie Mae's

5      servicing guidelines" and failed to adhere to them.  ECF No. 31 ¶¶ 31, 37.  Specialized argues that

6      Fannie Mae's servicing guidelines cannot serve as a basis for any of Lanier's claims.  ECF No. 32

7      at 10–11.  For the reasons set forth below, the Court agrees with Specialized.

8            The law is clear that "an alleged violation or breach of the Fannie Mae Servicing Guide

9      does not give rise to any cause of action."  *Vega v. Ocwen Fin. Corp.*, No. 2:14-CV-04408-ODW,

10     2015 WL 3441930, at *4 (C.D. Cal. May 28, 2015), *aff'd*, 676 F. App'x 647 (9th Cir. 2017).

11     "[F]ederal courts have uniformly concluded, to the extent that the [Fannie Mae] servicing

12     guidelines can be read as creating enforceable contractual duties, that borrowers are neither parties

13     nor third-party beneficiaries entitled to enforce the . . . servicing guidelines." *McKenzie v. Wells*

14     *Fargo Bank, N.A.*, 931 F. Supp. 2d 1028, 1044 (N.D. Cal. 2013); *see also Hinton v. Fed. Nat.*

15     *Mortgage Ass'n*, 945 F. Supp. 1052, 1056–57 (S.D. Tex. 1996) (rejecting the notion that a

16     violation of the Fannie Mae servicing guidelines may give rise to a cause of action); *Pennell v.*

17     *Wells Fargo Bank*, N.A., No. 10–cv–00582, 2012 WL 2873882, at *8 (S.D. Miss. July 12, 2012)

18     (same).  Lanier attempts to distinguish *Vega* on the ground that the plaintiff in that action "did not

19     establish a contractual relationship with the servicer that would include the Fannie Mae

20     guidelines," whereas she "made plausible allegations that suggest a closer contractual

21     relationship."  ECF No. 34 at 12.  Regardless of whether Lanier alleges "a closer contractual

22     relationship" with Specialized, she still has not provided any authority that suggests that she has

23     standing to enforce the servicing guidelines.  *See McKenzie*, 931 F. Supp. 2d at 1044.

24           Therefore, to the extent that Lanier's claims in the SAC are premised on violations of

25     Fannie Mae's servicing guidelines, these allegations do not plausibly allege a claim.  Nor would

26     discovery cure this problem, as Lanier suggests.  *See* ECF No. 34 at 13 (asserting that "[d]iscovery

27     is critical to uncover evidence that could support [her] claims").

28           The Court now addresses the specifics of Lanier's six claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**B.     Negligence**

2       Lanier again alleges that Specialized "had a duty to exercise reasonable care and skill in

3   managing and applying the payments for the Loan appropriately," and that it breached its duty

4   when it "wrongfully applied [her] payments to only the interest balance of the loan and not the

5   principal balance as required . . . under the Loan terms and Fannie Mae Servicing Guidelines."

6   ECF No. 31 ¶¶ 85, 86.

7       This Court previously dismissed Lanier's negligence claim, reasoning that "California

8   courts have made clear that 'as a general rule, a financial institution owes no duty of care to a

9   borrower when the institution's involvement in the loan transaction does not exceed the scope of

10   its conventional role as a mere lender of money.'"  ECF No. 30 at 5 (quoting *Nymark v. Heart*

11   *Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991)).  Although liability to a

12   borrower for negligence may arise when a "lender actively participates in the financed enterprise

13   beyond the domain of the usual money lender," *id.* (internal quotations and citations omitted), the

14   Court found that Specialized's role as a loan servicer fell short of the active participation required

15   to give rise to liability.  *Id.*

16       In her opposition, Lanier now contends that the "relationship and the subsequent actions"

17   of Specialized "extend well beyond the conventional role as a mere lender of money."  ECF No.

18   34 at 22.  She states that, as a result of her Chapter 13 bankruptcy filing, Specialized was subject

19   to "heightened" obligations and duties.  *Id.* at 23.  But Lanier provides no support for this

20   conclusory assertion.  Lanier also asks the Court to reconsider its prior decision on the ground that

21   it failed to "balance the following non-exhaustive factors" articulated in *Biakanja v. Irving*, 49

22   Cal.2d 647, 650 (1958):

23          i. the extent to which the transaction was intended to affect the
           plaintiff,
24          ii. the foreseeability of harm to him,
           iii. the degree of certainty that the plaintiff suffered injury,
25          iv. the closeness of the connection between the defendant's conduct
           and the injury suffered,
26          v. the moral blame attached to the defendant's conduct, and
           vi. the policy of preventing future harm.
27
ECF No. 34 at 22 (citing *Rowland v. JPMorgan Chase Bank, N.A.*, No. C 14-00036 LB, 2014 WL

28

1     992005, at *7 (N.D. Cal. Mar. 12, 2014)).  As Specialized points out, however, recent California

2     Supreme Court authority makes clear that the *Biakanja* factors "are commonly employed to

3     ascertain whether a court should recognize a duty, but are useful and appropriate for that purpose

4     only in situations involving parties that are not in privity with one another."  *Sheen v. Wells Fargo*

5     *Bank*, N.A., 12 Cal. 5th 905, 923 (2022), *reh'g denied* (June 1, 2022); *see* ECF No. 35 at 8.  Here,

6     Lanier and Specialized are in privity with each other.  Lanier's SAC states that "[t]he contractual

7     agreement between Plaintiff and [Specialized] is the Loan," ECF No. 31 ¶ 80, and she also

8     acknowledges in her opposition that "there was a contractual agreement between [herself] and

9     [Specialized]."  ECF No. 34 at 24.  Because negligence claims "are barred when they arise from—

10    or are not independent of—the parties' underlying contracts," *Sheen*, 12 Cal. 5th at 922, the Court

11    finds that Lanier fails to state a claim for negligence.  The Court therefore dismisses this claim,

12    this time with prejudice.  *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004)

13    (finding no error to deny amendment where amendment would be futile).

14         **C.     FDCPA**

15         The Court turns next to Lanier's claim under the Fair Debt Collection Practices Act

16    ("FDCPA"), which seeks to protect consumers against deceptive debt collection practices.  *See* 15

17    U.S.C. § 1692.

18         As a threshold matter, almost all of the new FDCPA allegations in Lanier's SAC rely on

19    the Fannie Mae servicing guidelines.  *See* ECF No. 31 ¶¶ 96–100, 104–05.  As discussed above,

20    *see supra* Section V-A, "an alleged violation or breach of the Fannie Mae Servicing Guide does

21    not give rise to any cause of action."  *Vega*, 2015 WL 3441930, at *4.  Accordingly, to the extent

22    that Lanier's claims are premised upon Specialized's alleged violation of the guidelines, these

23    claims are subject to dismissal.

24         The Court also agrees with Specialized that the remainder of Lanier's FDCPA allegations

25    "contradict the Exhibits attached to the SAC without any legal basis."  ECF No. 32 at 17.  For

26    example, Lanier alleges that "if [Specialized] would simply adhere to their own Counsel's filing

27    with the 4100R Form, the maximum amount that [Specialized] should be alleging to be owed is

28    $43,401.94."  ECF No. 31 ¶ 101.  But the reinstatement amount of $43,401.94 from December

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   2021 represents the payments due since the petition date, not the total amount required to pay off

2   the loan in full.  *See id.* at 852–60; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

3   (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (holding the

4   court need not "accept as true allegations that contradict matters properly subject to judicial notice

5   or by exhibit.").

6       Having previously dismissed Lanier's FDCPA claim, the Court now dismisses this claim

7   with prejudice.

8       **D.     RESPA**

9       Lanier's next claim is for a violation of the Real Estate Settlement Procedures Act, 12

10  U.S.C. § 2601, *et seq.* ("RESPA").  Under Section 2605, a borrow may submit "a qualified written

11  request" ("QWR") to a loan servicer "for information relating to the servicing of such loan."  12

12  U.S.C. § 2605(e)(1)(A).  "[A] borrower's written inquiry requires a response as long as it (1)

13  reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons

14  for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding

15  other information sought by the borrower,' and (3) seeks 'information relating to the servicing of

16  [the] loan.'"  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12

17  U.S.C. § 2605(e)(1)(A)–(B)).  A QWR may not request duplicative, confidential, proprietary,

18  privileged, irrelevant, or overbroad and unduly burdensome information.  *See* 12 C.F.R. §

19  1024.36(f)(1)(i)–(iv).

20      The RESPA allegations in Lanier's SAC are nearly identical to those in her original

21  complaint.  Lanier renews her contention that she "never received any written correspondence

22  from SLS containing [various] items and information."  ECF No. 31 ¶ 124.  In its prior order, the

23  Court explicitly noted that "Specialized's QWR responses demonstrate that Lanier received a

24  breakdown of claimed arrears, escrow statements, and copies of the note, deed of trust, servicing

25  transfer letter, loan modification offer, and loan payoff quote," and it did not provide Lanier leave

26  to amend these allegations.  ECF No. 30 at 9.  Further, Specialized argued that it did not furnish

27  certain documents because those requests fell "beyond the scope" of the statute.  ECF No. 19 at

28  17.  The Court granted Lanier "leave to amend [her] claim solely to establish that her QWR meets

7

1    the requirements of 12 U.S.C. § 2605." ECF No. 30 at 9.

2         Lanier has failed to demonstrate that her requests fall within the scope of the statute. Like

3    her first complaint, she provides only conclusory allegations that Specialized was "obligated to

4    provide" various documents but "failed to do so." ECF No. 31 ¶ 125.[2] And although Lanier

5    contends that "[m]ost if not all documents requested within the QWR are within the ordinary

6    course of [Specialized's] business," ECF No. 31 ¶ 128, this does little to show that the information

7    she seeks "relat[es] to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A).

8         Having previously dismissed Lanier's RESPA claim on the same ground, the Court now

9    dismisses this claim with prejudice.

10        **E.    TILA**

11        In her SAC, Lanier renews her allegation that Specialized violated the Truth in Lending

12   Act ("TILA"), 15 U.S.C. § 1601. The statute requires that loan servicers "provide the consumer,

13   for each billing cycle, a periodic statement" that includes information about the amount due, the

14   amount of any fees or charges imposed since the last statement, and any payment amount past due.

15   12 C.F.R. § 1026.41 (Regulation Z).

16        The Court previously dismissed Lanier's TILA claim on the ground that it was barred by

17   the one-year statute of limitations, and that she did not plead facts demonstrating that

18   "extraordinary circumstances beyond [her] control made it impossible to file the claims on time."

19   ECF No. 30 (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006)). In

20   her opposition, Lanier effectively concedes that her claim was brought outside the statute of

21   limitations. *See* ECF No. 34 at 16. Although she claims that the elements of equitable tolling

22   "have been established in specificity throughout the FAC and within this Opposition," the

23   argument is not persuasive. *Id.* Lanier offers few facts, if any, demonstrating that she either

24   diligently pursued her rights, or that some extraordinary circumstance prevented her from timely

25

26

27   ───────────────────

[2] Like her FDCPA, TILA, and negligence claims, Lanier alleges that Specialized violated RESPA in part because it failed to adhere to the Fannie Mae servicing guidelines. For the reasons set forth in Section V-A, Lanier cannot base her claim on a violation of the guidelines. *See supra* Section V-A.

28

United States District Court
Northern District of California

1    filing her claim.[3]

2         Because Lanier's TILA claim was previously dismissed on the same ground, the Court

3    now dismisses this claim with prejudice.

4         **F.**      **UCL**

5         The Court turns next to Lanier's claim that Specialized's "unlawful acts and practices . . .

6    constitute unlawful business acts and/or practices" under Section 17200 of the California Business

7    and Professions Code.  ECF No. 31 ¶ 165.  In its motion to dismiss, Specialized contends that

8    Lanier's UCL claim is "derivative" of her other claims and therefore it "also fails."  ECF No. 35 at

9    7.  It is well-established that "when the predicate claims fail, so too must the UCL claim."  ECF

10   No. 30 at 12; *see Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015) (finding that

11   where the predicate claims on which a plaintiff's UCL claims are based fail, the UCL claim fails

12   as well).

13        Having previously provided Lanier the opportunity to reassert this claim, the Court now

14   dismisses this claim with prejudice.

15        **G.**      **Declaratory Relief**

16        Finally, Lanier renews her claim for declaratory relief in her SAC.  As the Court stated in

17   its prior order, "[d]eclaratory relief is not a standalone claim."  ECF No. 30 at 12 (quoting *Doe 1 v.*

18   *GitHub, Inc.*, --- F. Supp. 3d ---, No. 22-CV-06823-JST, 2023 WL 3449131, at *14 (N.D. Cal.

19   May 11, 2023)).  Because declaratory relief is a remedy and not a cause of action, *see Lane v.*

20   *Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010), when the underlying

21   claims are dismissed, the declaratory relief cause of action must be dismissed as well.  *Shaterian v.*

22   *Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011).

23        Having previously provided Lanier the opportunity to reassert this claim, the Court now

24   dismisses this claim with prejudice.

25

26

27   _____

[3] Because the Court finds that Lanier's claim is barred by the statute of limitations, it declines to
28   reach Specialized's argument that Lanier has not adequately alleged "detrimental reliance."  ECF
No. 35 at 6.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**CONCLUSION**

2      For the foregoing reasons, the Court grants Specialized's motion.  Because the Court finds

3  that amendment of Lanier's claims would be futile, her claims are now dismissed with prejudice.

4  *Novak*, 795 F.3d at 1020.

5      The Clerk shall enter judgment and close the file.

6      **IT IS SO ORDERED.**

7  Dated:  March 4, 2024



8                                              JON S. TIGAR
9                                       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28